UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STANLEY REALTY HOLDINGS, LLC,

     Plaintiff,

     v.

TOWN OF WATERTOWN,
MICHAEL J. DRISCOLL, WATERTOWN
ZONING BOARD OF APPEALS,
JOHN W. MARSHALL,
ANTHONY D. FURIA, ELAINE V. GREY,
MELISSA SANTUCCI, JOHN G. GANNON,
GREGORY P. WATSON,
WATERTOWN HOUSING PARTNERSHIP,
THOMAS WADE, MARIANNE CAMERON,
LARRY YOUNG, R. STEWART WOOSTER,
HOWARD HASHEM, HAROLD BEJCIK,
MARK MESSINA, JAMES BARWELL,
CRAIG MCKENNA,
BEACON RESIDENTIAL PROPERTIES
CORP., BEACON PLEASANT STREET
PHASE 1 LLC, and 555 WATERTOWN, LLC,

     Defendants.

04    11394 WGY

MAGISTRATE JUDGE _____

RECEIPT # _____ 56228
AMOUNT $ _____
SUMMONS ISSUED ___
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE _____

## COMPLAINT

    This is an action under Title VIII of the Civil Rights Act of 1968, as amended and codified at 42 U.S.C. § 3601 et seq.; and other federal and state civil rights laws, seeking relief from defendants' illegal and discriminatory efforts to block the construction of affordable housing in Watertown, Massachusetts.

### Jurisdiction

    1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367(a).

~BOST1:301783.v4

## Venue

2.     Venue is proper under 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to the claims set forth in this Complaint occurred in this judicial district.

## Parties

3.     Plaintiff Stanley Realty Holdings, LLC ("Stanley Realty") is a Massachusetts limited liability company with its principal place of business at 101 Arch Street, Boston, Massachusetts. Stanley Realty controls a 15.4-acre parcel (the "Stanley Realty Site") located at the corner of Waltham Street and Stanley Avenue in Watertown. Stanley Realty has been constructively granted a comprehensive permit under M.G.L. c.40B, §§ 20-23, to construct a 264-unit development (the "Stanley Realty Project") on the Stanley Realty Site.

4.     Defendant Town of Watertown (the "Town") is a municipal corporation organized under the laws of The Commonwealth of Massachusetts, with offices at 149 Main Street, Watertown, Massachusetts.

5.     Defendant Michael J. Driscoll is a resident of Massachusetts. At all times relevant to this Complaint, defendant Driscoll was the Town Manager for the Town. Mr. Driscoll is named as a defendant in his official, and not individual, capacity.

6.     Defendant Watertown Zoning Board of Appeals (the "ZBA") is a municipal board of appeals duly constituted pursuant to M.G.L. c.40A, § 12. The ZBA's offices are at 149 Main Street, Watertown, Massachusetts.

7.     Defendant John W. Marshall resides at 230 Orchard Street, Watertown, Massachusetts.

8.     Defendant Anthony D. Furia resides at 208 East Boylston Street, Watertown, Massachusetts.

9.     Defendant Elaine V. Grey resides at 23 Irving Street, Watertown, Massachusetts.

10.    Defendant John G. Gannon resides at 158 Spring Street, Watertown, Massachusetts.

11.    Defendant Melissa Santucci resides at 3 Melville Terrace, Watertown, Massachusetts.

12.    Defendants Marshall, Furia and Grey are members of the ZBA.  Defendants Gannon and Santucci are alternate members of the ZBA.  Defendants Marshall, Furia, Grey, Gannon and Santucci (together with the ZBA, the "ZBA Defendants") are named as defendants in their official, and not individual, capacities.

13.    Defendant Gregory P. Watson is a resident of Massachusetts.  He is the Director of Planning and Community Development for the Town.  The Town hired Mr. Watson as Director in April 2002.

14.    Defendant Watertown Housing Partnership ("WHP") is a board created by the Town to oversee, among other things, affordable-housing programs in Watertown.  WHP's offices are at 149 Main Street, Watertown, Massachusetts.

15.    Defendant Thomas Wade is a resident of Massachusetts.

16.    Defendant Marianne Cameron is a resident of Massachusetts.

17.    Defendant Larry Young is a resident of Massachusetts.

18.    Defendant R. Stewart Wooster is a resident of Massachusetts.

19.    Defendant Howard Hashem is a resident of Massachusetts.

20.    Defendant Harold Bejcik is a resident of Massachusetts.

21.    Defendant Mark Messina is a resident of Massachusetts.

22.    Defendant James Barwell is a resident of Massachusetts.

23.    Defendant Craig McKenna is a resident of Massachusetts.

24.    Defendants Watson, Wade, Cameron, Young, Wooster, Hashem, Bejcik, Messina, Barwell and McKenna (together with all of the aforementioned defendants, the "Town Defendants") are members of the WHP. They are named as defendants in their official, and not individual, capacities.

25.    Defendant Beacon Residential Properties Corp. ("Beacon Residential") is a Massachusetts corporation with its principal place of business at 150 Federal Street, Boston, Massachusetts.

26.    Defendant Beacon Pleasant Street Phase 1 LLC ("Beacon Phase 1") is a Delaware limited liability company with its principal place of business at 667 Madison Avenue, New York, New York.

27.    Defendant 555 Watertown, LLC (together with Beacon Residential and Beacon Phase 1, the "Beacon Defendants") is a Massachusetts limited liability company with its principal place of business at 667 Madison Avenue, New York, New York. 555 Watertown, LLC owns a 13.04-acre site located on the corner of Pleasant Street and Stanley Avenue in Watertown, Massachusetts (the "Beacon Site"). The Stanley Realty Site abuts the Beacon Site to the north.

## Facts

*Affordable Housing in Watertown*

28.    Since 1968, the federal government and the Commonwealth have struggled to promote the construction of "affordable housing," typically defined as a unit that can be rented or purchased by a household earning on average no more than 80% of the area median income, as defined by the U.S. Department of Housing and Urban Development ("HUD"). In the

Greater Boston Metropolitan Area, a disproportionately high number of racial minorities,

persons of color and female-headed households earn no more than 80% of the area's median

income, as defined by HUD.

29.    In 1969, the Commonwealth enacted a law known as "Chapter 40B," codified at

M.G.L. c.40B, §§ 21-23.  Chapter 40B

> was intended to increase the supply and improve the distribution of housing for
> low and moderate income families by making it easier to develop affordable
> housing, especially in communities where local zoning and other restrictions
> hindered its construction.  The law established a streamlined process for
> qualified developers to use when proposing subsidized housing and provided for
> a limited override of local regulations that impeded its development.

Citizens' Housing and Planning Association, *The Record on 40B: The Effectiveness of the*

*Massachusetts Affordable Housing Zoning Law*, 5 (June 2003).  Chapter 40B's streamlined

permitting process and its powers of "limited override" are available to qualified private

developers unless the municipality is able to demonstrate that it has made substantial progress

towards allowing the construction of affordable housing.  A municipality can show such

progress by demonstrating, among other things, that (a) 10% of the municipality's total housing

units qualify as "affordable"; (b) affordable housing exists on sites comprising 1.5% of the

municipality's land that is zoned for residential, commercial or industrial use; or (c) the

municipality has advanced towards the 10%-unit goal by at least 2% during the prior twelve

months.

30.    As of April 2002, only 5.45% of the total housing units in Watertown were

deemed affordable.

31.    Data from the federal 2000 Census shows that there are significantly higher

numbers of racial minorities, persons of color, and female-headed households among the low-

and moderate-income population that currently resides in Watertown, as compared with the

town's higher-income population as a whole. Watertown's affordable-housing crisis – a crisis that Defendants have chosen to exacerbate through the practices described below – thus has a disproportionately greater impact upon persons protected by Title VIII.

*Watertown's Affordable-Housing Bylaw*

32.   In 2000, Watertown's Town Council enacted an affordable-housing bylaw, now codified at § 5.07 of the Town's zoning bylaws ("Section 5.07").

33.   Section 5.07(c)(1) requires any applicant for a special permit that seeks to build more than five units in any of the Town's "I-3" zones to "provide ten percent (10%) of the total units in the subject development as affordable housing units." Section 5.07(c)(2) defines "affordable unit" as one that is "available for rental or ownership, and affordable to households earning on average no more than 80% of the area median income, as defined by [HUD]. Affordability is defined as no more than 30% of household income paid for housing costs. For a rental unit, 30% of household income can be paid for rent."

34.   Section 5.07(c)(3) further provides: "In general, affordable units provided under the terms of this Section shall be provided on site in the subject residential...development." Section 5.07(d)(2) requires such units to be "dispersed throughout the building(s) and...be compatible with and generally comparable to market-rate units in terms of location, quality and character, room size and external appearance." While Section 5.07 permits the ZBA "in certain circumstances [to] authorize...that affordable housing units be provided off-site, or that an alternative method of compliance be used, subject to a finding that it is in the best interest of the Town to do so" (hereafter, the "Section 5.07(c)(3) Exemption"), that exemption is illegal under Title VIII, as it only perpetuates discrimination against persons protected under Title VIII.

*The Beacon Development*

35.    555 Watertown, LLC purchased the Beacon Site through two transactions that closed in 2000.  On information and belief, the ownership of 555 Watertown, LLC changed subsequent to the company's acquisition of the Beacon Site, and the new owners reached an agreement with the other Beacon Defendants to develop the site for apartments.

36.    The Beacon Site is in an I-3 zone under the Town's zoning bylaws.  The Beacon Defendants thus knew that their project would have to comply with Section 5.07, including its fair-distribution requirement.

37.    After deciding to develop the Beacon Site, the Beacon Defendants (a) approached the Town Defendants to see what the Beacon Defendants could do to obtain approvals of their development of the Beacon Site; and (b) on information and belief, were told that they needed to help the Town become less vulnerable to affordable-housing developments under Chapter 40B, including but not limited to a development that the Town Defendants believed would be proposed by Stanley Realty.

38.    On July 15, 2003, the Beacon Defendants sent a letter to Planning Director Watson (the "July 15 Letter").  The July 15 Letter outlined a proposal to build a 375-unit residential rental development (the "Beacon Project").

39.    Section 5.07 required the Beacon Project to include at least 38 units of affordable housing.  Section 5.07 further required that the units be evenly distributed throughout the project, unless the ZBA found that an alternative method of compliance with Section 5.07 was in the "best interests" of the Town.

40.    On information and belief, the Beacon Defendants believed that dispersal of the required 38 affordable-housing units throughout the Beacon Project would decrease the value of Project's market-rate units.

41.    In the July 15 Letter, the Beacon Defendants described a way in which they could circumvent the fair-distribution requirements of Section 5.07, and thereby discriminate illegally on the basis of race, color and sex, by proposing to "permit" the Beacon Project in two so-called phases of 187 and 188 units each ("Phase 2" and "Phase 1," respectively[1]). Defendants' sole purpose in "permitting" the Beacon Project in "phases" was to discriminate against the construction of affordable housing in Watertown.

42.    The Beacon Defendants proposed in the July 15 Letter to build "off-site," but in their artificial "Phase 1" of the Beacon Project, the nineteen affordable-housing units that Section 5.07 required to be distributed evenly within "Phase 2" of the project.

43.    The scheme presented in the July 15 Letter not only allowed the Beacon Defendants to circumvent Section 5.07's fair-distribution requirements for the Beacon Project, but also allowed the Town Defendants to discriminate illegally on the basis of race, color and sex against the construction of affordable housing in Watertown.

44.    The July 15 Letter suggested that if the Town Defendants (a) permitted the Beacon Defendants to build the nineteen "Phase 2" affordable units in "Phase 1," for a total of 38 affordable units in "Phase 1"; and (b) agreed to support the enrollment of "Phase 1" under the Commonwealth's Local Initiatives General Program, the Town could claim that 20% of the

---

[1]    The July 15 Letter refers to a 187-unit portion of the Beacon Project as "phase 1," and a 188-unit portion of the Beacon Project as "phase 2." In later proceedings, Defendants reversed the labels, referring to Phases 1 and 2 as ¶ 41 of this Complaint does.

total 188 units in Phase 1 (that is, 38 units) were "affordable," and thus make all 188 units in Phase 1 count as "affordable" under Chapter 40B.[2]

45.    Had the Town Defendants enforced Section 5.07 against the Beacon Defendants and required an even distribution of the Beacon Project's affordable units throughout the Beacon Site, only the 38 affordable units proposed for construction in the Beacon Project and a pro rata portion of the land within the project would have counted as "affordable" housing under Chapter 40B.

46.    Defendants believe that once a comprehensive permit for Phase 1 has issued, the Town will have met Chapter 40B's 1.5% land-area exemption, thereby preventing other developers from using Chapter 40B (absent consent of the Town Defendants) to create affordable housing in Watertown.

47.    Absent the implementation of the illegal proposal outlined in the July 15 Letter, Chapter 40B and Section 5.07 would have permitted the construction of a greater number of affordable units in Watertown.  Because of the Town Defendants' approval of the Beacon Project, fewer affordable housing units will be constructed in Watertown, and no affordable housing will be built in Phase 2 of the Beacon Project.

48.    Reasonable municipal officials similarly situated to the Town Defendants would have understood that (a) the proposals outlined in the July 15 Letter would have an adverse impact upon the construction of affordable housing in Watertown, and (b) reduced construction

---

[2]    Decisional law and regulations under Chapter 40B have established that 100% of the dwelling units in a qualifying rental project count as "affordable" units under Chapter 40B, even if in fact only a portion of the units are designated for rental to low- and moderate-income families.

of affordable housing would have a disproportionate impact upon racial minorities, persons of color and female-headed households.

49.    Shortly after receiving the July 15 Letter, the Town Defendants agreed to support the Beacon Defendants' illegal proposal. Defendants subsequently began exchanging information concerning the design of the Beacon Project, the characteristics of the Beacon Site, and potential zoning issues, in the absence of any formal application by the Beacon Defendants for approval of any portion of the project.

50.    On September 18, 2003, the Beacon Defendants formally requested the Town's approval of a "site eligibility letter" for Phase 1 of the Beacon Project.

51.    On September 26, 2003, Beacon Residential filed an application (the "Special Permit Application") for a special permit for the Beacon Project. The Special Permit Application shows that Phases 1 and 2 are physically interconnected and indistinguishable, but for the illegal concentration of affordable-housing units in Phase 1. Both "phases" share, among other things, common driveways, parking, a service area, a pool, and a maintenance garage. The Special Permit Application proposed no temporal distinction between Phases 1 and 2.

52.    The day before Beacon Residential filed its Special Permit Application, Howard Cohen, an officer of the Beacon Defendants, and Jason Talerman, an attorney for the Town, briefed officials of the Commonwealth's Department of Housing and Community Development ("DHCD") about the Beacon Project. Cohen and Talerman assured DHCD that the ZBA would issue a special permit for the project. Attorney Talerman explained that the Town Defendants supported the Beacon Project because it would allow the Town Defendants to claim that the Town qualified for the 1.5% land-area exemption under Chapter 40B.

53.    On December 3, 2003, Beacon Phase 1 filed an application with the ZBA pursuant to Chapter 40B (the "Comprehensive Permit Application"). The Comprehensive Permit Application covered Phase 1 of the Beacon Project, encompassing 189 of the 375 total units of the Beacon Project and covering 6.2 acres of the 13.04-acre Beacon Site.

54.    On February 17, 2004, the Town (acting through WHP) entered into a so-called "Affordable Housing Agreement" with 555 Watertown, LLC and Beacon Residential.

55.    On February 18, 2004, the ZBA formally approved both the Special Permit Application and the Comprehensive Permit Application. In doing so, the ZBA found that granting the Beacon Defendants leniency under the Section 5.07(c)(3) Exemption, and excusing the Beacon Defendants from Section 5.07's fair-distribution requirement, was in the "best interests" of the Town.

## COUNT I
### (Violation of Title VIII of the Civil Rights Act of 1968 – Approval of Beacon Project)

56.    Stanley Realty incorporates by reference ¶¶ 1-55 above as and for this ¶ 56.

57.    By promoting the Beacon Project, Defendants knowingly, recklessly and intentionally have refused to make dwellings within the Beacon Site and elsewhere in Watertown available to racial minorities, persons of color, and female-headed households.

58.    By promoting the Beacon Project, Defendants knowingly, recklessly and intentionally have discriminated against persons in the terms, conditions and privileges of rental of dwellings, and in the provision of services and facilities in connection therewith, because of their race, color, and sex.

59.    For their own advantage, Defendants knowingly, recklessly and intentionally have implemented a plan for creating segregated dwellings for racial minorities, persons of color, and female-headed households within the Beacon Project.

60.    Defendants' promotion of the Beacon Project has the unlawful effect of making dwellings within the Beacon Site and elsewhere in Watertown unavailable to racial minorities, persons of color, and female-headed households.

61.    The ZBA Defendants' exemption of Phase 2 of the Beacon Project from the fair unit-distribution requirement of Section 5.07, while insisting that Stanley Realty abide by that requirement, gives the Beacon Defendants an unfair economic advantage over Stanley Realty in the rental of market-rate units in the Beacon Project, thereby causing Stanley Realty to suffer damages.

## COUNT II
### (Violation of Title VIII of the Civil Rights Act of 1968 – Section 5.07(c)(3) Exemption)

62.    Stanley Realty incorporates by reference ¶¶ 1-61 above as and for this ¶ 62.

63.    On its face and as applied to the Beacon Project, Section 5.07(c)(3) perpetuates discrimination that is illegal under Title VIII, and thus is preempted by Title VIII.

64.    Through their application of Section 5.07(c)(3) to the Beacon Project, the ZBA Defendants knowingly, recklessly and intentionally have refused to make dwellings within the Beacon Site and elsewhere in Watertown available to racial minorities, persons of color, and female-headed households.

65.    Through their application of Section 5.07(c)(3) to the Beacon Project, the ZBA Defendants knowingly, recklessly and intentionally have discriminated against persons in the terms, conditions and privileges of rental of dwellings, and in the provision of services and facilities in connection therewith, because of race, color, and sex.

66.    The ZBA's application of Section 5.07(c)(3) to the Beacon Project has the unlawful effect of making dwellings within the Beacon Site and elsewhere in Watertown unavailable to racial minorities, persons of color, and female-headed households.

**COUNT III**
**(Violation of 42 U.S.C. § 1985(3))**

67.    Stanley Realty incorporates by reference ¶¶ 1-66 above as and for this ¶ 67.

68.    The Beacon Defendants conspired with the Town Defendants to propose and develop the Beacon Project.

69.    Defendants conspired to develop the Beacon Project for the purpose of depriving racial minorities, persons of color, and female-headed households of the equal protection of the laws and of equal privileges and immunities under the laws by making housing unavailable to them on the basis of their group.

70.    In furtherance of the conspiracy, Defendants among other things (a) discussed and agreed to promote the Beacon Project, (b) jointly obtained approvals for the Beacon Project, and (c) agreed to apply for inclusion of Phase 1 of the Beacon Project in the Commonwealth's Local Initiatives General Program.

71.    Defendants' conspiracy has caused damages to Stanley Realty.

**COUNT IV**
**(Violation of 42 U.S.C. § 1986)**

72.    Stanley Realty incorporates by reference ¶¶ 1-71 above as and for this ¶ 72.

73.    Each Defendant had actual knowledge of the conspiracy described in ¶¶ 68-70 above.

74.    Each Defendant had the power and opportunity to thwart the conspiracy.

75.    Each Defendant failed to thwart the conspiracy.

76.    Since the conspiracy was not thwarted, the Beacon Project was approved, thereby depriving racial minorities, persons of color, and female-headed households of the equal

protection of the laws and of equal privileges and immunities under the laws by making housing unavailable to them on the basis of their group.

77.    Defendants' attainment of the goals of their conspiracy has caused damages to Stanley Realty.

**COUNT V**
**(Violation of M.G.L. c. 151B, § 4—Beacon Defendants)**

78.    Stanley Realty incorporates by reference ¶¶ 1-77 above as and for this ¶ 78.

79.    The Beacon Defendants knowingly, recklessly and intentionally have refused to rent to and have withheld from persons and groups of persons multiple-dwelling and contiguously located housing accommodations, and land intended for such accommodations, because of their race, color, sex, and marital status.

80.    The Beacon Defendants knowingly, recklessly and intentionally have discriminated against persons because of their race, color, sex, and marital status in the terms, conditions and privileges of multiple-dwelling and contiguously located housing accommodations and land intended for such accommodations, and in the furnishing of facilities and services in connection therewith.

81.    The Beacon Defendants' illegal conduct has directly caused Stanley Realty substantial damages, and has aggrieved Stanley Realty.

FOR THESE REASONS, Stanley Realty Holdings, LLC requests that the Court:

A.    Annul Beacon Residential Properties Corp.'s special permit;

B.    Annul Beacon Pleasant Street Phase 1 LLC's comprehensive permit;

C.    Declare invalid under 42 U.S.C. § 3615 the provisions of Section 5.07(c)(3) that allow the ZBA "in certain circumstances [to] authorize that affordable housing units be provided off-site, or that an alternative method of compliance be used, subject to a finding that it is in the best interest of the Town to do so";

D.  Enjoin Defendants from engaging in further discriminatory practices (including, but not limited to, concentrating affordable-housing units in any portion of the Beacon Site);

E.  Enter judgment awarding Stanley Realty actual damages, in an amount to be determined at trial;

F.  Enter judgment awarding Stanley Realty punitive damages, assessed against the Beacon Defendants only;

G.  Award Stanley Realty its reasonable costs and expenses in bringing this action, including attorneys' fees; and

H.  Grant such further relief as the Court considers just and appropriate.

STANLEY REALTY DEMANDS A TRIAL BY JURY OF ANY ISSUE TRIABLE AS OF RIGHT BY A JURY.


                                    STANLEY REALTY HOLDINGS, LLC,

                                    By its attorneys,


                                    Michael D. Vhay (BBO #566444)
                                    Bruce S. Barnett (BBO # 647666)
                                    Sergio J. Campos (BBO # 658121)

                                    PIPER RUDNICK LLP
                                    One International Place, 21st Floor
                                    100 Oliver Street
                                    Boston, MA  02110-2600
                                    (617) 406-6000 (*telephone*)
                                    (617) 406-6100 (*fax*)

Dated:  June 18, 2004

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. **TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY).**

   Stanley Realty Holdings, LLC v. Town of Watertown

2. **CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).**

   ___ I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   _X_ II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,      *Also complete AO 120 or AO 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.        for patent, trademark or copyright cases

   ___ III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.

   ___ IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

   ___ V.    150, 152, 153.

   `04  11394 WGY`

3. **TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(E)).**

   N/A

4. **HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?**     YES ☐     NO ☒

5. **DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC 2403)**     YES ☐     NO ☒
   **IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?**     YES ☐     NO ☐

6. **IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC 2284?**     YES ☐     NO ☒

7. **DO ALL PARTIES IN THIS ACTION RESIDE IN THE CENTRAL SECTION OF THE DISTRICT OF MASSACHUSETTS (WORCESTER COUNTY) - (SEE LOCAL RULE 40.1(C)).**     YES ☐     NO ☒
   **OR IN THE WESTERN SECTION (BERKSHIRE, FRANKLIN, HAMPDEN OR HAMPSHIRE COUNTIES)? - (SEE LOCAL RULE 40.1(D)).**     YES ☐     NO ☒

8. **DO ALL OF THE PARTIES RESIDING IN MASSACHUSETTS RESIDE IN THE CENTRAL AND/OR WESTERN SECTIONS OF THE DISTRICT?**     YES ☐     NO ☒
   (a)   IF YES, IN WHICH SECTION DOES THE PLAINTIFF RESIDE? _____

9. **IN WHICH SECTION DO THE ONLY PARTIES RESIDING IN MASSACHUSETTS RESIDE?**     Eastern

10. **IF ANY OF THE PARTIES ARE THE UNITED STATES, COMMONWEALTH OF MASSACHUSETTS, OR ANY GOVERNMENTAL AGENCY OF THE U.S.A. OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE IN THE CENTRAL SECTION:**     YES ☐ NO ☒     **OR WESTERN SECTION:**     YES ☐     NO ☒

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME     Michael D. Vhay, Esq.

ADDRESS     Piper Rudnick, One International Pl., Boston, MA 02110

TELEPHONE NO.     617-406-6033

(Category.cov.rev - 3/97)

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Stanley Realty Holdings, LLC

## DEFENDANTS

Town of Watertown, et al.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___ Suffolk ___
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __ Middlesex
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Michael D. Vhay
Piper Rudnick LLP
One International Place
Boston, MA 02110

ATTORNEYS (IF KNOWN)

Jason R. Talerman
Kopelman & Paige, PC
31 St. James Avenue
Boston, MA 02116

## II. BASIS OF JURISDICTION (PLACE AN × IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN × IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Illegal housing discrimination (42 USC §3601, MGL c.151B, §4), conspiracy to violate civil rights (42 USC §§1985(3), 1986)

## V. NATURE OF SUIT (PLACE AN × IN ONE BOX ONLY)

| CONTRACT | TORTS |  | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability |  | ☐ 640 R.R & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability |  |  | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus: | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 443 Housing/ Accommodations | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Other |  |  | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property |  |  |  |  |  |

## VI. ORIGIN (PLACE AN × IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $
Injunction, damages

Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____ DOCKET NUMBER _____

DATE 6/18/04

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT